# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **VICTORIA DANIEL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 2:23-cv-1464-ACA |
| ) | |
| **SANOFI S.A.,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Defendants Sanofi-Aventis U.S., LLC and Sanofi US Services, Inc. manufactured, marketed, and sold Taxotere, a chemotherapy medication. In 2009, Plaintiff Victoria Daniel used Taxotere. Ms. Daniel ultimately experienced permanent hair loss and thinning. In 2016, Ms. Daniel filed her complaint against Defendants, alleging that her permanent hair loss was a side effect of Taxotere.

Defendants move for judgment on the pleadings, contending that some of Ms. Daniel's claims are time barred and that she failed to plead the rest with the particularity required by Federal Rule of Civil Procedure 9(b). (Doc. 14). Because the court agrees, the court **WILL GRANT** Defendants' motion and **WILL DISMISS** this action **WITH PREJUDICE**.

I.  BACKGROUND

When deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 928 (11th Cir. 2023).

The court received this case on remand from the judicial panel that is presiding over *In re: Taxotere (Docetaxel) Products Liability Litigation*, No. 16-md-2740 (J.P.M.L.) (the "multidistrict litigation"). (*See* doc. 9). Ms. Daniel's short form complaint provides almost no factual allegations. (*See* doc. 6). Instead, it incorporates in full the master complaint from the multidistrict litigation. (*See id*. at 1). After Ms. Daniel filed her short form complaint, the Plaintiffs Steering Committee in the multidistrict litigation filed a second amended master complaint. (*See* doc. 8-4 at 342–409).

"[A]n amended pleading supersedes the former pleading." *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022). "The original pleading is abandoned by the amendment[] and is no longer a part of the pleader's averments against his adversary." *Id*. (cleaned up). The second amended master complaint is the operative multidistrict pleading in this case (*see* doc. 8-3 at 516; *see also* doc. 8-4 at 342–409), and the court will consider only the allegations in that complaint to

rule on Defendants' motion. These are the facts alleged in Ms. Daniel's complaint and the operative complaint in the multidistrict litigation:

Ms. Daniel was diagnosed with breast cancer and underwent chemotherapy using Taxotere. (Doc. 8-4 at 342–43 ¶ 5; *see also* doc. 6 at 3). Defendants are pharmaceutical companies who researched, developed, tested, manufactured, labeled, advertised, marketed, promoted, sold and/or distributed Taxotere. (Doc. 8-4 at 346–51 ¶¶ 15–31).

Ms. Daniel used Taxotere from August 25, 2009 to December 15, 2009. (Doc. 6 at 4). Ms. Daniel experienced permanent hair loss and thinning, which she contends was a side effect of Taxotere. (*Id*.; *see also* doc. 8-4 at 343–44 ¶ 5). The permanent hair loss made Ms. Daniel feel stigmatized, altered her self-image, affected her relationships with others, and otherwise prevented her from "return[ing] to normalcy" after receiving treatment. (Doc. 8-4 at 344 ¶ 6).

Ms. Daniel contends that her experience is not unique. (*See*, *e.g.*, *id*. at 343–45 ¶¶ 5–11). It is "a now well-documented side effect" of Taxotere "that the[] drug[] cause[s] permanent hair loss." (*Id*. at 343 ¶ 4). Ms. Daniel contends that Defendants failed to warn patients and healthcare providers that Taxotere could cause permanent hair loss. (*Id*.). Ms. Daniel alleges that Defendants instead concealed this side effect from the public. (Doc. 8-4 at 343 ¶ 4).

During the multidistrict litigation, the parties engaged in several rounds of motion and pleading practice as well as various bellwether trials. (*See* doc. 8-3 at 515–17; *see also id*. at 528–30) (summarizing the multidistrict litigation proceedings). After the first bellwether trial, the Plaintiffs Steering Committee moved for leave to amend their allegations, requesting to redefine their injury from becoming permanent six months after chemotherapy to a time that "varies from patient to patient." (*See* doc. 8-4 at 1425–26) (quotation marks omitted). The judicial panel denied leave to amend, finding that this change to the definition of the plaintiffs' injuries would "cause serious prejudice to Defendants." (*Id*. at 1429).

Thereafter, the judicial panel entered Pretrial Order No. 105, which directed all plaintiffs to "amend their complaints to add factual allegations regarding particularized facts individual and specific to each" plaintiff. (Doc. 8-2 at 167 ¶ 2). The parties then entered two different stipulations regarding Pretrial Order No. 105, only one of which is relevant to this case. (*See id*. at 169–74). In that stipulation, the plaintiffs "agree[d] not to seek leave to amend [their short form complaints] to add or include any allegations that are inconsistent with [Pretrial Order No.] 105 or [the judicial panel's other] [o]rders addressing motions to amend . . . , including any allegations that ha[d] been previously disallowed by the" judicial panel. (*Id*. at 169 ¶ 2). In turn, Defendants "agree[d] that it will not argue waiver based on any

[p]laintiff's refraining from amending her [short form complaint] to include allegations inconsistent with" Pretrial Order No. 105. (*Id*. at 169 ¶ 3).

Ms. Daniel did not amend her short form complaint. And at the time the court received this case, the deadline for her to do so had passed. (*See* doc. 8-3 at 517).

## II. DISCUSSION

Ms. Daniel asserts all the remaining claims in the master complaint against Defendants: (1) strict products liability – failure to warn; (2) negligence; (3) negligent misrepresentation; (4) fraudulent misrepresentation; (5) fraudulent concealment; and (6) fraud and deceit. (Doc. 6 at 4; *see also* doc. 8-4 at 387–89 ¶¶ 221–31, 391–405 ¶¶ 240–311; doc. 8-3 at 515–16 (explaining that the judicial panel dismissed the claims for product liability for misrepresentation and breach of warranty). And she independently asserts a claim under Alabama's Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1, *et seq*. (Doc. 6 at 4–5). For the ease of the court and convenience of the parties, the court refers to Ms. Daniel's strict liability, negligence, and ADTPA claims as the "products claims." The court refers to all other claims as the "fraud claims."

Defendants assert that Ms. Daniel's claims are improperly pleaded and time barred. (Doc. 14). In response, Ms. Daniel first contends that Defendants' motion is not ripe for review. (*See* doc. 21 at 4). The court will first ensure that Defendants' motion is ripe before examining Defendants' arguments.

5

1. Defendants' motion is ripe for review.

Ms. Daniel contends that Defendants' motion is procedurally improper because the pleadings are not "closed" as required by Federal Rule of Civil Procedure 12(c). (*See* doc. 21 at 4); Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). The court rejects this argument.

A motion for judgment on the pleadings "provides a means of disposing of cases when a judgment on the merits can be achieved by focusing on the content of the competing pleadings." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (cleaned up). In pertinent part, "competing pleadings" refer to an answer and a complaint. *See id*. at 1336–37 (discussing Federal Rule of Civil Procedure 7(a)).

Ms. Daniel contends that the court does not have an answer because Defendants did not file an answer to Ms. Daniel's short form complaint. (Doc. 21 at 2). But the short form complaint provides almost no factual allegations. (*See* doc. 6). Instead, it incorporates in full the master complaint from the multidistrict litigation. (*See id*. at 1). And the court *does* have an answer to the master complaint in the multidistrict litigation. (*See* doc. 8 at 3–4; doc. 8-4 at 246–409; *see also* doc. 8-2 at 151 ¶ 3) ("No Defendants other than Sagent and Actavis shall plead in response to the Second Amended Master Long Form Complaint, and each Defendant's answer

and defenses to the First Amended Master Long Form Complaint is hereby deemed to be its answer and defenses to the Second Amended Master Long Form Complaint."). Accordingly, the pleadings are closed.

Ms. Daniel further contends that because her case has been remanded from multidistrict litigation, the appropriate procedure is to grant her leave to amend her complaint. (*See* doc. 21 at 2, 4). First, the court does not ordinarily consider motions that are buried in parties' briefs. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009); *see also* Fed. R. Civ. P. 7(b)(1). Second, to the extent Ms. Daniel has requested leave to amend, her motion is substantively improper because she has not provided the court any proposed amendments so that the court can evaluate the amendments' futility. *See Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) ("A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."). Accordingly, to the extent Ms. Daniel requests leave to amend her complaint, the court **DENIES** that request for those two separate and independent reasons.

2. <u>Ms. Daniel has not pleaded her fraud claims with the requisite particularity.</u>

Defendants assert that Ms. Daniel has not pleaded her fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b). (*See* doc. 14 at 14–15). Ms. Daniel does not fully respond to this argument, arguing instead that there is ample record evidence adduced during the multidistrict litigation proceedings to

support her fraud claims. (*See* doc. 21 at 10–11; *see also id*. at 7–8). But this is a motion for judgment on the pleadings, and the court does not consider evidence. *See* Fed. R. Civ. P. 12(d).

"In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Specifically, a plaintiff must allege "(1) precisely what statements were made . . . , (2) the time and place of each such statement and the person responsible for making" the statement, "(3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (quotation marks omitted). Rule 9(b) also applies to claims of fraudulent concealment. *See Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006).

When the judicial panel presiding over the multidistrict litigation remanded this case, the panel advised this court that the panel had directed all plaintiffs to amend their short-form complaints to include plaintiff-specific allegations for the fraud claims. (Doc. 8-3 at 516). The deadline to plead those allegations has expired (*id*. at 517), and Ms. Daniel did not amend her short form complaint. Accordingly, the only allegations particular to Ms. Daniel are: (1) she used Taxotere from August 25, 2009 to December 15, 2009; (2) the Taxotere was administered to her in Alabama; and (3) her hair loss and thinning became permanent. (Doc. 6 at 4). The

presumed date of permanency is June 15, 2010. (*Compare id.*, *with* doc. 8-4 at 377–78 ¶ 181).

Because Ms. Daniel did not amend her short form complaint to include allegations that are specific to her, there are no allegations regarding how Defendants' statements misled her. (*Compare* doc. 6, *with* doc. 8-3 at 516); *see also Young*, 57 F.4th at 875; *Henderson*, 454 F.3d at 1284. Although the operative master complaint contains general allegations regarding Defendants' conduct (*see* doc. 8-4 at 397–99 ¶¶ 268–76), Ms. Daniel cannot satisfy Rule 9(b)'s requirements with general allegations, *see* Fed. R. Civ. P. 9(b). Accordingly, Ms. Daniel has not pleaded her fraud claims in accordance with Rule 9(b), and the court **WILL DISMISS** Ms. Daniel's fraud claims on that ground.

3. Ms. Daniel's products claims are time barred.

Defendants assert that Ms. Daniel's products claims are time barred because her injury accrued in 2010 and she did not file her complaint until 2016. (Doc. 14 at 11–12). Ms. Daniel presents three arguments in response. (*See* doc. 35 at 4–6; *see also id.* at 6–10). The court examines each in turn.

> a. *Pretrial Order No. 105 and the parties' stipulation regarding the same does not bar Defendants' arguments.*

Ms. Daniel first argues that the parties' stipulation precludes Defendants from arguing that her claims are time barred. (Doc. 21 at 2). Defendants respond that Pretrial Order No. 105 and the parties' stipulation are irrelevant. (Doc. 24 at 8).

9

The judicial panel issued Pretrial Order No. 105 after it denied the Plaintiffs Steering Committee's motion for leave to amend the plaintiffs' allegations to expand the scope of the plaintiffs' injuries. (*Compare* doc. 8-4 at 1425–29, *with* doc. 8-2 at 167–68). "Considering many [p]laintiffs ha[d] begun amending . . . their individual [s]hort [f]orm [c]omplaints in response to [the judicial panel's] rulings on" the Plaintiff Steering Committee' motion to amend, the judicial panel entered Pretrial Order No. 105, which directed all plaintiffs to "amend their complaints to add factual allegations regarding particularized facts individual and specific to each" plaintiff. (Doc. 8-2 at 167). The parties stipulated that the plaintiffs would not add "any allegations that are inconsistent with [Pretrial Order No.] 105 or [the judicial panel's other] [o]rders addressing motions to amend" and that Defendants would "not argue waiver based on any [p]laintiff's refraining from amending her [short form complaint] to include allegations inconsistent with" Pretrial Order No. 105. (*Id*. at 169 ¶¶ 2–3).

That stipulation therefore means that Defendants cannot argue that Ms. Daniel waived her claims by failing to amend her short form complaint to allege facts that were inconsistent with the judicial panel's prior orders. (*See id*. at 169 ¶¶ 2–3). But that is not what Defendants are arguing. (*See* doc. 24 at 8–9). They are instead asserting that Ms. Daniel's allegations *as alleged* render her claims barred by the applicable statute of limitations. Accordingly, the court's analysis proceeds.

10

> *b. Because Ms. Daniel did not properly allege a fraudulent concealment claim, she cannot invoke Alabama Code § 6-2-3.*

Ms. Daniel invokes Alabama Code § 6-2-3, which she asserts tolls the applicable statute of limitations for her products claims. (Doc. 21 at 10; *see also id*. at 4–6). Defendants reply that Alabama Code § 6-2-3 is inapplicable because Ms. Daniel has not pleaded her fraudulent concealment claim with particularity. (Doc. 24 at 5–6).

"In actions seeking relief on the ground of fraud . . . , the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3. The Alabama Supreme Court interprets this provision to also toll the statute of limitations "to other torts not arising in fraud" when pleaded alongside a claim of fraudulent concealment because "[a] party cannot profit by his own wrong in concealing a cause of action against himself until barred by [the statute of] limitation[s]." *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010) (quotation marks omitted).

But there is a problem: the claim of fraudulent concealment must itself be properly pleaded to toll the statute of limitations for products claims. *Henderson*, 454 F.3d at 1282–83; *see also Miller v. Mobile Cnty. Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981) (holding that the failure to sufficiently plead a claim of fraudulent concealment prevents a litigant from invoking Alabama Code § 6-2-3 for the

11

remaining tort claims). Ms. Daniel has not properly pleaded a claim of fraudulent concealment, *supra* at 7–9, and therefore may not invoke Alabama Code § 6-2-3 for her products claims.

### c. Ms. Daniel's allegations preclude her from asserting that her hair loss was a latent injury.

Ms. Daniel contends that the permanency of her hair loss was a latent injury that could not be discovered during the applicable two-year statute of limitations. (Doc. 21 at 4–6). Defendants reply that this position is inconsistent with her allegations and applies only in cases involving asbestos. (Doc. 24 at 2–5). The court does not decide whether a latent injury exception to the statute of limitations for products cases exists under Alabama law because Ms. Daniel's pleaded allegations preclude her from making this argument.

Under Alabama law, the distinctive characteristic of a latent injury is that it materializes slowly and prevents the individual from "recogniz[ing] the nature, seriousness, and compensable character of [an] injury" at the time the injurious conduct occurs. *Dillard v. Calvary Assembly of God*, 372 So.3d 551, 557 (Ala. Civ. App. 2022) (quotation marks omitted). The complaint alleges that Taxotere "cause[s] [p]ermanent [c]hemotherapy [i]nduced [a]lopecia, which is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (Doc. 8-4 at 377–78 ¶ 181). Because Ms. Daniel alleges that she stopped using Taxotere in December 2009, by the terms of her complaint, her hair

12

loss was permanent by June 2010. (*Compare* doc. 6 at 4, *with* doc. 8-4 at 377–78 ¶ 181). She further alleges that her hair loss heightened her everyday awareness of her cancer treatment. (Doc. 8-4 at 387 ¶ 216). Specifically, she alleges that her hair loss caused others to stare at her and avoid public contact, that she felt stigmatized, and that the hair loss altered her self-image. (*Id*. at 344 ¶ 6, 387 ¶ 218).

These allegations prevent Ms. Daniel from asserting that she was unaware of "the nature, seriousness, and compensable character of" her hair loss. *See Dillard*, 372 So.3d at 557. One of Ms. Daniel's product claims is subject to a one-year statute of limitations and the remainder of her products claims are subject to a two-year statute of limitations. *See Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1305 (11th Cir. 2000); Ala. Code §§ 6-2-38(1), 8-19-14. Because Ms. Daniel did not file her complaint until 2016, her products claims are time barred, and the court **WILL DISMISS** Ms. Daniel's product claims on that ground.

4.  Separately, Ms. Daniel is not entitled to equitable tolling.

Ms. Daniel asserts that equitable tolling applies to her claims because Defendants' labeling, marketing materials, and package inserts misled her into believing her hair would eventually grow back. (Doc. 21 at 6–10). Defendants respond that that Ms. Daniel's allegations identify publicly available information that she could have discovered through reasonable diligence that would have put her on notice of her claims. (Doc. 24 at 6–7).

"The party seeking equitable tolling has the burden of proof, although he need not make any allegations about equitable tolling in his complaint." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc) (citation omitted). "A plaintiff nonetheless can plead h[er]self out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling." *Id*. And that is what Ms. Daniel has done here.

Ms. Daniel alleges that medical studies identified a potential link between Taxotere and permanent hair loss as early as December 2006. (Doc. 8-4 at 370 ¶ 150). Ms. Daniel further alleges that medical journals also began publishing articles regarding a potential link between Taxotere and permanent hair loss as early as 2009. (*E.g.*, *id*. at 371 ¶ 152, 372–74 ¶¶ 158–62). Ms. Daniel also alleges that news articles began reporting on this potential link as early as March 2010. (*E.g.*, *id*. at 371–72 ¶¶ 153–57).

The pleaded examples of publicly available information regarding a potential link between Taxotere and permanent hair loss suggest that Ms. Daniel could have discovered her cause of action through reasonable diligence. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 394 (5th Cir. 2021) ("A reasonable inquiry would have uncovered at least some information that linked Taxotere to

14

persistent alopecia.").[1] Accordingly, the court **WILL GRANT** Defendants' motion on the separate and independent basis that Ms. Daniel's pleaded allegations foreclose a finding of reasonable diligence.

## III. CONCLUSION

The court **WILL GRANT** Defendants' motion. The court **WILL DISMISS** all claims **WITH PREJUDICE**. The court will enter a separate order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this April 8, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

[1] Decisions of the Fifth Circuit are not binding on this court, but such decisions may be cited as persuasive authority. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) ("[W]e consider decisions from other circuits as persuasive authority"); *see also Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). The court finds the reasoning of the Fifth Circuit persuasive.